# Holt v. Thurman, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. REVERSED.

PUBLIC OFFICERS—ASSIGNMENT OF UNEARNED SALARY.

Held: The assignment by a public officer of salary to be earned in the future is void as against public policy. Manly v. Betzer, 91 Ky., 596, overruled.

CHAS. P. JOHNSON AND PRYOR & SAPINSKY, FOR APPELLANT.

(No brief for appellant.)

J. B. McCORMICK AND BULLITT & SHEILD, FOR APPELLEE.

W. T. Thurman was the duly elected prosecuting attorney of the police court of the city of Louisville with a fixed salary of $3,500 per year, payable monthly.

The appellant, J. T. Holt, was a creditor of W. T. Thurman, as was also the appellees, H. Wedekind & Co.

Thurman was indebted to appellee, W. S. Miller, Jr., in the sum of $291.66 and by a writing dated November 3, 1897, he assigned to Miller his salary for the month of November, 1897, and Miller being indebted to Wedekind & Co, indorsed said assignment to Wedekind & Co. The appellant, Holt, having a judgment for his debt, amounting to $135 and a return of "*nulla bona,*" sued out an attachment on November 23d, and garnished the wages of Thurman, claimed to be in the hands of the city of Louisville.

The city filed an answer setting up the assignment to Miller, and Wedekind & Co., and Miller filed their petition and were made parties in which they claimed the attached fund under their assignment. Holt demurred to this pleading, and his demurrer being overruled, he declined to plead further, and judgment was entered for Wedekind & Co., from which Holt appeals. The questions to be decided therefore are:

1. Whether an assignment of wages to be earned in the future under an existing contract is valid and vests in the assignee an equity superior to that of an attaching creditor?

2. Whether such an assignment is against public policy?

1. We contend that the assignment is valid and has been so held in this State and in other States and by many text writers.

Holt v. Thurman, &c.

2. If the assignment is void as against public policy, then it is against public policy to enforce the attachment lien of Holt.

### AUTHORITIES CITED.

Manly v. Bitzer, 91 Ky., 596; Boone v. Connelly, 12 Ky. Law Rep., 190; Bridgeford v. Keenehan, 8 Ky. Law Rep., 268; Griffen v. Mulliken, Sept., 1876; Newby, &c., v. Hill, 2 Metc., 531; Chitty on Contracts, vol. 2, p. 1361; Bracket v. Blake, 7 Metc., 335; Hartley v. Tapley, 2 Gray, 565; Gardner v. Haeg, 18 Pick., 168; Emery v. Laurence, 8 Cushing, 151; Benjamin on Sales, sec. 78; Beach on Contracts, vol. 2, sec. 1498; Field v. Shipley, 79 Ky., 260.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

At the date of the institution of this suit in the Jefferson circuit court, on the 26th of July, 1897, W. T. Thurman was the duly elected, qualified, and acting prosecuting attorney of the Louisville city court, and was by law entitled to be paid a salary for his services by the city of Louisville of $3,500, in monthly installments of $294.66, on the last day of each month of his term. The appellant, J. T. Holt, had recovered a judgment against him, upon which execution had issued, and been returned by the proper officer "No property found." Thereupon this action was instituted pursuant to section 439 of the Civil Code to subject the salary due to Thurman as prosecuting attorney by the city of Louisville to the payment of his judgment. Writs of garnishment were issued at different times, which were served upon the treasurer of the city, which seem to have been abandoned. Finally, on the 23d of November, 1897, an alias attachment was issued, which was duly served upon the treasurer. The city of Louisville, for answer to the garnishment, said that on the 18th of November, 1897, before the suing out of the last attachment, there was filed with the auditor of the city, a writing, dated November 3, 1897, purporting to be an assignment by

William T. Thurman of his salary due from the city for
the month of November, 1897, to one W. S. Miller; and
that, furthermore, no part of the salary of the defendant
Thurman for the month of November, 1897, was due at
the date of the service of the garnishment upon the city,
and asked that the order of attachment be discharged.
Subsequently, on the 6th of January, 1898, another alias
attachment was sued out, which was duly served upon the
treasurer of the city, seeking to garnishee the salary of
Thurman for the months of November and December, 1897;
Thereupon appellees H. Wedekind & Co. filed their petition
to be made parties to the proceeding, setting up a written
assignment dated November 3, 1897, by which Thurman
assigned to W. S. Miller, Jr., his salary of $291.66 due and
and to become due for the month of November, 1897, as
prosecuting attorney of the police court, and which was
on the same day assigned in writing to them by Miller;
and alleged that the assignment to them was prior in date
to the attachment; and asked that the city of Louisville
be required to pay Thurman's salary for November to
them.   And the appellees, L. Simons & Co. filed their peti-
tion to be made parties, in which they allege that on the
6th day of December, 1897, Thurman, for a valuable con-
sideration, had assigned and transferred to them in writ-
ing his salary earned and to be earned as prosecuting at-
torney of the police court for the month of December, 1897.
The city of Louisville was required by rule to pay into court
the amount due Thurman for salary as prosecuting at-
torney for the months of November and December, 1897.
The appellant, Holt, interposed a general demurrer to
each of the petitions of Wedekind & Co. and Simons & Co.,
which were overruled, and judgment entered for claim-

ants, and to review that judgment this appeal is prose-
cuted.

The claims of both appellant and appellees are *bona
fide*, and there is no dispute as to the facts, and the record
therefore only presents two questions of law to be decided
by this court: First. Is the assignment of his salary by
a public officer, before it becomes due, contrary to public
policy, and void? Second. Can the salary of a public
officer, before it becomes due and payable, be reached by
attachment, and subject to the claim of a creditor of such
officer? This question was considered by this court in the
case of Manly v. Bitzer, 96 Ky., 596, 13 R., 166 (16 S.W., 464),
(34 Am. St. Rep.,242). The controversy was over the wages
of a policeman in the city of Louisville. He had, about the
1st of the month, sold and assigned his claim against the city
for wages of that month, and after the assignment, a cred-
itor sought to subject it by attachment. It was held that,
as the policeman had an existing contract with the city
for the payment of such a salary, and his term of office
extended beyond the time when it could be presumed be-
cause of the existence of the contract that the salary would
be earned, and had such a potential existence that he had
a right to transfer it, and, having done so for value, it
vested the assignee with an equity which, being older in
time than that of the attachment, must prevail. The opin-
ion does not discuss or decide the question from the stand-
point of public policy, and the authorities cited to support
it do not in any way consider or involve this question.
There is no suggestion in the opinion of any distinction
whatever between the unearned wages of a person occupy-
ing a mere private position and one who is discharging
the duties of a public officer. In the first case, the law is
well settled that there may be an assignment of wages.

or salary to be earned under an existing employment, made in good faith, and for a valuable consideration, and that a court of equity will compel the specific performance of such a contract in certain cases, there being no question of public policy involved in such a transfer; and to this class of cases the authorities referred to in Manly v. Bitzer have a direct application, and they are supported by many authorities. See 2 Am. & Eng. Enc. Law (2d Ed.) 31; Perkins v. Butler (Neb.) 2 Am. & Eng. Dec. Eq., 218 (62 N. W., 308), where there is a very full collation of the authorities on this subject. But the law is equally well settled that the future salaries of public officers are not assignable on the ground of public policy, and an attempted assignment thereof is void. "The protection thus extended to those engaged in the performance of public duties is not based upon the ground of their private interest, but upon the necessity of securing the efficiency of the public service by insuring that the funds provided for its maintenance shall be received by those who are to perform the work, at the periods appointed for their payment; and the assignment of such funds before they are due impairs the efficiency of the public service, and is void, both in law and equity, as being against public policy." See 2 Am. & Eng. Enc. Law (2d Ed.) p. 1033, and cases there cited. This question has been repeatedly considered by the English and most of the American State courts, and they have been well-nigh unanimous in holding against the validity of such assignments on the ground of public policy. We quote a few of them here: Greenh. Pub. Pol., rule 293, p. 349, says: "Any contract which secures to any one not occupying a public office its benefits or emoluments, or any part thereof, is void." Id., rule 297, p. 351: "The salary or emoluments of a public officer, except when they are al-

ready earned, . . . are all incapable of assignment."
Mechem. Pub. Off., section 874: "Assignment of unearned
compensation opposed to public policy. . . . While the
compensation already earned by a public officer may val-
idly be assigned by him, it is settled by clear preponder-
ance of authority that an assignment of future compen-
sation, not yet earned, whether payable by salary or fees,
is opposed to public policy, and void. 'Salaries,' it is said
in one case, 'are by law payable after work is performed,
and not before, and while this remains the law, it must be
presumed to be a wise regulation, and necessary, in the
view of the lawmakers, to the efficiency of the public ser-
vice. The contrary rule would permit the public service
to be undermined by the assignment to strangers of all
the funds appropriated to salaries.' It is true that in re-
spect to officer removable at will this evil could, in some
measure, be limited by their removal when they were found
assigning their salaries; but this is only a partial remedy,
for there would still be no means of preventing the contin-
ued recurrence of the same difficulty. If such assignments
are allowed, then the assignees, by notice to the govern-
ment, would, on ordinary principles, be entitled to receive
pay directly, and to take the place of their assignors in re-
spect to the emoluments, leaving the duties as a barren
charge to be borne by the assignors. It does not need
much reflection or observation to understand that such a
condition of things could not fail to produce results dis-
astrous to the efficiency of the public service." And to
the same effect are Clark. Cont. c. 8, p. 419, and Lawson,
cont., section 355, p. 379, Bliss v. Lawrence, 58 N. Y., 442,
17 Am. Rep., 273 (syllabus): "An assignment by a public
officer of the future salary of his office is contrary to pub-
lic policy, and is void." Statement of the case: "The

complaint in each case alleged and the evidence established
the fact that the defendant was a clerk of the United States
treasury department in New York City, and that he sold and
assigned to plaintiff a month's salary in advance at a dis-
count of ten per cent.; that the defendant, when the sal-
ary became due, collected the same, and converted it to
his own use." Opinion: "The controlling question in
these cases is that of the lawfulness of an assignment by
way of anticipation of the salary to become due to a public
officer. The particular cases presented are of assignments
of a month's salary in advance. But, if this can be sus-
tained in law, then such assignments may cover the whole
period of possible service. In the particular cases before
us, the claims to a month's salary seem to have been sold
at a discount of about ten per cent. While this presents
no question of usury (since it was a sale, and not a loan,
for which the parties were dealing), it does present a
quite glaring instance and example of the consequences
likely to follow the establishment of the validity of such
transfers, and thus illustrates one, at least, of the grounds
on which the alleged rule of public policy rests, by which
such transfers are forbidden. The public service is pro-
tected by protecting those engaged in performing public
duties, and this not upon the ground of their private in-
terest, but upon that of the necessity of securing the effi-
ciency of the public service by seeing to it that the funds
provided for its maintenance should be received by those
who are to perform the work at such periods as the law
has appointed for their payment. It is argued that a pub-
lic officer may better submit to a loss in order to get his
pay into his hands in advance than deal on credit for his
necessary expenses. This may be true, in fact, in individ-
ual instances, and yet may, in general, not be in accordance

with the fact. The substance of all is the necessity of maintaining the efficiency of the public service by seeing to it that the public salaries really go to those who perform the public service. To this extent, we think, the public policy of every country must go to secure the end in view." It would not be profitable for us to quote numerous other decisions sustaining the conclusion of the New York court, but we will cite a few of them. See State v. Williamson (Mo. Sup.) 21 L. R. A., 827 (23 S. W., 1054), Schloss v. Hewlett, 81 Ala., 268 (1 South., 263), Bangs v. Dunn, 66 Cal., 72 (4 Pac., 963), Beal v. McVicker, 8 Mo. App., 202; Stone v. Lidderdale, 2 Anstr., 233; Davis v. Duke of Marlborough, 1 Swanst., 74; Flarty v. Odlum, 3 Term R., 681; Lidderdale v. Montrose, 4 Term R., 248; Barwick v. Reade, 1 H. Bl., 627; Arbuckle v. Cowtan, 3 Bos. & P., 328; McCarthy v. Goold, 1 Ball & B., 389; Emerson v. Hall, 13 Pet., 409, 10 L. Ed., 223; King v. Hawkins (Ariz.), 16 Pac., 434; Field v. Chipley, 79 Ky., 260 (42 Am. Rep., 215); Billings v. O'Brien, 14 Abb. Prac. (N. S.), 246; Bank v. Fink, 86 Tex., 303; (24 S. W., 256); Williams v. Ford (Tex. Civ. App.) 27 S. W., 723; Stevenson v. Kyle (W. Va.) 24 S. E., 886. In these various decisions, it has been held that the pay of an army officer, the salary of a clerk in the federal treasury, of a United States inspector of customs, of a county assessor, of a mail carrier, of a clerk of the police court, of the fees of a master of chancery, of a clerk of a court of chancery, of a sheriff, and of many other officers, can not be assigned in advance. So great were the wrongs arising from the assignment of claims against the United States government that a statute was passed in 1853, and re-enacted in section 3477 of the Revised Statutes of the United States, prohibiting the assignment of any claim or any interest in any claim until after it had been allowed, and a warrant

for its payment issued.  In this State this question was
very fully considered in the case of Field v. Chipley, 79 Ky.,
260.  It was there held to be against public policy for the
clerk of the Louisville chancery court to assign the fees
and emoluments of his office to be earned in the future.
Public policy is defined by Mr. Wharton to be "the prin-
ciples under which the freedom of contract and private
dealing is restricted by law for the good of the community.
Thus, certain classes of acts are said to be 'against public
policy,' and the law refuses to enforce or recognize them on
the ground that they have a mischievous tendency, so as to
be injurious to the interests of the State, apart from illegal-
ity or immorality."  The regular receipt by public officers
of the salary provided by law for their compensation strong-
ly tends to secure the faithful discharge of their duty.  If
the prosecuting attorney of the city court can assign un-
earned salary for one month, no valid reason can be sug-
gested why he could not assign it for one year, or, indeed,
for the entire term for which he was elected.  If a part is
assignable by way of anticipation, there can be no limit,
and thus one of the strongest incentives to the faithful per-
formance of official duty is removed.  For these reasons
we hold the assignment by the appellee, Thurman, of his
unearned salary for the months of November and Decem-
ber, to H. Wedekind & Co. and L. Simons & Co., contrary
to public policy, and absolutely void, and the case of
Manly v. Bitzer is overruled.  By a parity of reason it fol-
lows that a creditor can not subject the salary of a public
officer, which is to become due for services to be rendered
in the future, as such a course would result in expelling
the debtor from the public service, and would be detri-
mental to the public weal.  But it has been held by this
court, in a number of cases that, as a city is a corporation,

a creditor may subject money actually due and owing from the city to the officer for services which have been fully rendered at the date of the service to the attachment. See Speed v. Brown, 49 Ky., 111. It therefore follows that, as no salary was due to the appellee on the 23d of November, the date of the service of the first alias attachment, nothing was reached by this attachment; but, at the time the alias attachment was served upon the city on the 6th day of January, there was due and owing to appellant by the city for services actually performed his salary for two months, and appellant was entitled to have same subjected to the payment of the debt sued for. For the reasons indicated, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.