WILLIE BELLE DEATON v. EDGAR J. DEATON.

(Filed 8 April, 1953.)

**1. Divorce and Alimony § 15—**

A decree of absolute divorce obtained by the wife on the ground of two years separation, G.S. 50-6, does not annul the right of the wife to receive permanent alimony under a judgment rendered in her action for alimony without divorce before the commencement of the proceedings for absolute divorce, since such case falls squarely within the second proviso of G.S. 50-11.

**2. Constitutional Law §§ 8a, 10a—**

Where the language of a statute is plain and unambiguous, the courts are without power to attribute any other meaning to its words on the ground of public policy, since public policy is in the exclusive province of the General Assembly.

APPEAL by defendant from *Nettles, J.,* at February Term, 1953, of CABARRUS.

Motion to vacate prior judgment awarding permanent alimony to wife on theory that such judgment was annulled by subsequent decree of absolute divorce obtained by wife under two-year separation statute.

These are the facts:

1. On 6 September, 1950, the plaintiff Willie Belle Deaton brought this action against her husband, the defendant Edgar J. Deaton, in the Superior Court of Cabarrus County for alimony without divorce under G.S. 50-16. The defendant was served with summons and entered a general appearance. When the action was tried on its merits before Judge F. Donald Phillips and a jury at the June Term, 1951, of the Superior Court of Cabarrus County, the jury answered the issues of fact in favor of the plaintiff and against the defendant, and Judge Phillips rendered a judgment on the verdict awarding the plaintiff $100.00 monthly from the earnings of the defendant as permanent alimony. The judgment was affirmed by us on the defendant's appeal. *Deaton v. Deaton,* 234 N.C. 538, 67 S.E. 2d 626. The defendant has complied with the judgment in all respects.

2. Subsequent to the trial of this action, to wit, on 2 December, 1952, the plaintiff brought an action against the defendant in the Superior Court of Cabarrus County for an absolute divorce on the ground of two years' separation under G.S. 50-6. The defendant was served with summons in the action. When the action was tried on its merits before Judge Zeb V. Nettles and a jury at the January Term, 1953, of the Superior Court of Cabarrus County, the jury answered the issues of fact in favor of the plaintiff and against the defendant, and Judge Nettles entered a

judgment on the verdict absolutely divorcing the plaintiff and the defendant from the bonds of matrimony.

3. Thereafter, to wit, at the February Term, 1953, of the Superior Court of Cabarrus County the defendant applied to Judge Nettles by a motion in the cause for an order vacating the judgment rendered in this action at the June Term, 1951, on the ground that his liability to pay alimony to the plaintiff terminated as a matter of law when the marriage of the parties was dissolved by an absolute divorce on the application of the plaintiff. Judge Nettles entered an order denying the motion, and the defendant appealed, assigning the denial of his motion as error.

*R. Furman James for plaintiff, appellee.*

*Hartsell & Hartsell, William L. Mills, Jr., and E. Johnston Irvin for defendant, appellant.*

ERVIN, J. The appeal presents this question for decision: Does a decree of absolute divorce obtained by the wife under the two-year separation statute codified as G.S. 50-6 annul the right of the wife to receive permanent alimony under a judgment rendered in an action for alimony without divorce before the commencement of the proceeding for absolute divorce?

The plaintiff asserts that this question ought to be answered in the negative. To sustain her position, she lays hold on the second proviso in the statute embodied in G.S. 50-11 and cites these decisions: *Simmons v. Simmons,* 223 N.C. 841, 28 S.E. 2d 489; *Dyer v. Dyer,* 212 N.C. 620, 194 S.E. 278; *Howell v. Howell,* 206 N.C. 672, 174 S.E. 921; and *Lentz v. Lentz,* 193 N.C. 742, 138 S.E. 12. G.S. 50-11 is couched in this language: "After a judgment of divorce from the bonds of matrimony, all rights arising out of the marriage shall cease and determine, and either party may marry again unless otherwise provided by law: Provided, that no judgment of divorce shall render illegitimate any children *in esse,* or begotten of the body of the wife during coverture; and, provided further, that a decree of absolute divorce upon the ground of separation for two successive years as provided in section 50-5 or section 50-6 shall not impair or destroy the right of the wife to receive alimony under any judgment or decree of the court rendered before the commencement of the proceeding for absolute divorce."

The defendant insists that the question raised by the appeal should be answered in the affirmative. He argues that the cases invoked by the plaintiff do not decide this precise question; that the right of the wife to alimony stems from the marital obligation of the husband to support her; that it is unjust and contrary to public policy for the wife to receive alimony from the husband after she has put an end to the marital relation

by procuring a decree of absolute divorce; and that the Legislature intended the second proviso of G.S. 50-11 to protect a prior award of alimony only in case the decree of absolute divorce is obtained by the husband.

We are inclined to accept as valid the contention of the defendant that the decisions cited by the plaintiff do not adjudicate the precise question now before us. The decrees of absolute divorce involved in the *Simmons, Dyer,* and *Howell cases* were procured by husbands rather than by wives. The decision in the *Lentz case* that the subsequent decree of absolute divorce obtained by the wife did not invalidate a prior consent judgment obligating the husband to make certain future payments for the benefit of the wife was rested squarely on the proposition that the consent judgment constituted a contract between the husband and wife and stipulated in express terms that nothing short of the remarriage of the wife should relieve the husband of the obligation to make the specified payments.

We are unable, however, to reconcile the contentions of the defendant respecting legislative intent and public policy with the wording of the second proviso in G.S. 50-11. The General Assembly inserted the second proviso in the statute for the purpose of taking the special cases mentioned in such proviso out of the general enactment that a decree of absolute divorce puts an end to all rights arising out of the marriage. *Cameron v. Highway Commission,* 188 N.C. 84, 123 S.E. 465. In so doing, the General Assembly expressed in unambiguous language its plain purpose that a subsequent decree of absolute divorce obtained by either the husband or the wife upon the ground of separation for two successive years as provided in G.S. 50-5 or G.S. 50-6 shall not impair or destroy the right of the wife to receive alimony from the husband under any judgment of the court rendered before the commencement of the proceeding for absolute divorce. We cannot attribute any other meaning to the proviso without usurping a legislative power denied to us by our organic law. 50 Am. Jur., Statutes, section 228. Where the General Assembly has spoken in a constitutional manner, public policy is what the General Assembly has declared that policy to be. *Batesville Casket Co. v. Fields,* 288 Ky. 104, 155 S.W. 2d 743; *Park Const. Co. v. Independent School Dist. No. 32, Carver County,* 209 Minn. 182, 296 N.W. 475, 135 A.L.R. 59; *State v. Lincoln County Power Dist. No. 1,* 60 Nev. 401, 111 P. 2d 528. This being so, public policy respecting the effect of decrees of absolute divorce is to be found in the second proviso of G.S. 50-11 as well as in the general enactment which the proviso qualifies.

Whether a statute produces a just or an unjust result is a matter for legislators and not for judges. We are nevertheless constrained to observe that justice does not necessarily require that a faithless husband shall be relieved of all responsibility for the support of an innocent wife who has

spent her youth in his service merely because the wife sees fit to put an end in law to a marriage long since ended in fact by his broken vows.

What has been said necessitates an affirmance of the order refusing to vacate the alimony judgment.

Affirmed.